UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHEW S.[1]

                                              Plaintiff,

        V.                                            6:23-CV-00281 (AMN/MJK)

COMMISSIONER OF SOCIAL SECURITY,

                                              Defendant.
_____

HOWARD D. OLINSKY, ESQ., for Plaintiff
VERNON NORWOOD, Special Asst. U.S. Attorney, for Defendant

TO THE HONORABLE ANNE M. NARDACCI:

**REPORT-RECOMMENDATION**

       Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying his application for benefits. Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 6), and this matter was therefore referred to me for Report and Recommendation by United States District Court Judge Anne M. Nardacci, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Both parties filed briefs (Dkt. Nos. 17, 22), which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation will identify the plaintiff using only his first name and last initial.

1

I.  **PROCEDURAL HISTORY**

On December 27, 2018, plaintiff protectively filed an application for Title II Disability Insurance Benefits ("DIB"). (Administrative Transcript, ("T") at 309-10). Plaintiff alleged disability beginning October 9, 2016, due to obesity, high blood pressure, depression, anxiety, sleep apnea, high cholesterol, and back issues. (T.309-10, 351). Plaintiff's claim was denied initially on April 22, 2019 (T.164-69), and upon reconsideration on July 12, 2019 (T. 171-76).  After a hearing held on September 29, 2020 (T.76-98), Administrative Law Judge ("ALJ") Bruce S. Fein issued an unfavorable decision dated December 4, 2020  ( T.140-54). Plaintiff appealed, and the Appeals Council remanded the decision on July 27, 2021. (T.160-62).

Following a second hearing held November 23, 2021 (T.49-75), the ALJ issued an unfavorable decision on December 7, 2021, concluding that the plaintiff was not under a disability within the meaning of the Social Security Act from October 9, 2016, through September 30, 2019, the "date last insured." (T.7-24). On January 31, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T.1-3). This action followed. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

II. **GENERALLY APPLICABLE LAW**

    A.  **Disability Standards**

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that he is "unable to engage in any substantial gainful

2

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ

explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III. FACTS

Plaintiff was 38 years old on the alleged onset date. (T.114). He has a high school education, and reported past work as a bus aide, laborer, mechanic and fast food supervisor. (T.352-53).

Plaintiff was treated by Corrie Schell, FNP-C ("NP Schell") and established a relationship with her on April 5, 2019. (T.524). NP Schell provided a Medical Source Statement (Physical) dated September 30, 2021 which expressed her opinion concerning plaintiff's limitations as of and prior to the date last insured, September 30, 2019. (T.851-52).

The ALJ's decision discusses in detail the medical evidence, the relevant portions of which will be discussed below.

### IV. THE ALJ'S DECISION

In his decision, the ALJ found the following: Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2019 ("date last insured" or "DLI")). (T.12). Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 9, 2016 through the DLI. (T.13). In reviewing the Plaintiff's medical history, including records of medical treatment after the date last insured, the ALJ found that Plaintiff suffered from the severe impairments of morbid

5

obesity and degenerative disc disease of the lumbar spine with spondylosis and radiculopathy. (T.13). Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (T.16).

The ALJ then determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: "all postural limitations on an occasional basis except no climbing ropes, ladders, and scaffolds. He should avoid concentrated exposure to unprotected heights, hazardous machinery, and pulmonary irritants such as fumes, odors, gases, dust, and poorly ventilated areas." (T.15-16). The ALJ further found Plaintiff was unable to perform any past relevant work, but that there was work in the national economy Plaintiff could perform. (T.21-23). Thus, the ALJ determined Plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 9, 2016 through the date last insured. (T.24).

## V.  ISSUES IN CONTENTION

Plaintiff contends that the RFC determination was unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion of Nurse Practitioner ("NP") Schell. Plaintiff asserts that the ALJ did not apply and failed to explain the supportability and consistency factors (20 C.F.R. §404.1520c(c)) when he considered the medical evidence provided by NP Schell.  (Plaintiff's Brief ("Pl.'s Br.") at 7-13) (Dkt. No. 17).

Defendant contends that the ALJ's decision is supported by substantial evidence and is free of legal error, and as a result, the ALJ's decision must be affirmed. (Defendant's Brief ("Def.'s Br.") at 5-15) (Dkt. No. 22).

## DISCUSSION

### VI. RFC/EVALUATING MEDICAL EVIDENCE

#### A. Legal Standards

##### 1. Residual functional capacity ("RFC")

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

  **2.** **Evaluating Medical Evidence**

An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability and consistency of those opinions. 20 C.F.R. § 404.1520c(b). *See Byrd v. Kijakazi*, 20 Civ. 4464, 2021 WL 5828021, at *15 (S.D.N.Y. Nov. 12, 2021) ("The ALJ must provide an explanation for the factors of supportability and consistency, because these factors are the most important."). As to supportability, "[t]he more relevant the

8

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As for consistency, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Sherwood v. Kijakazi*, No. 21 Civ. 10847, 2022 WL 19406585, at *13 (S.D.N.Y. Nov. 23, 2022) (quoting § 404.1520c(c)(2)), *report and recommendation adopted*, 2023 WL 2662804 (S.D.N.Y. Mar. 28, 2023). "An ALJ must not only consider supportability and consistency in evaluating medical source opinions but also must explain the analysis of those factors in the decision." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941, 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021) (citing 20 C.F.R. § 404.1520c(b)(2)).

**B.     Analysis**

NP Schell's treatment records are found at or within exhibit nos. 3F (T.530–34), 20F (T.747-842), and 26F (T.883-940). NP Schell's medical source statement is found at exhibit no. 22F (T.850-853). Records of diagnostic tests ordered by NP Schell are found at exhibit no. 4F (T.535-548).

The ALJ's decision was meticulous in identifying medically observed signs and diagnosed conditions, supported by references to hearing exhibits - in some cases

9

multiple hearing exhibits - in conjunction with his findings throughout the sequential analysis. For example, in assessing plaintiff's severe impairments the ALJ noted:

> There are also references to breathing difficulties associated with chronic obstructive pulmonary disease, asthma, and tobacco dependence, but physical examinations routinely described his lungs as clear to auscultation (Exhibit 3F, page 5; 12F, page 5; 16F, page 60; 18F, pages 21, 28; 20F, pages 5, 16; 26F, pages 17, 40).

(T.13). The court considers this search for examination signs and diagnosed conditions throughout the entirety of the medical records as evidence of the ALJ's effort to develop a foundation for the analysis of the consistency and supportability factors.

The ALJ also explicitly discussed NP Schell's medical source statement, dated September 30, 2021, in his written decision. (T.18-19, *citing* T. 851-52). The ALJ stated that he was "not very persuaded by the opinion rendered by [NP Schell], the claimant's primary provider (Exhibit 22F)[(T.851-52)], because the significant restrictions she identified are contradicted by the diagnostic images in record (Exhibits 4F page 13; 16F, pages 17, 54; 27F, pages 1-2), and her own treatment notes (Exhibits 3F, 20F, 26F)." (T.18). Exhibit 4F includes reports of laboratory work and X-rays ordered by NP Schell. (T.535-48). Exhibits 16F (T.599-696) and 27F (T.941-51) were treatment records prepared by other medical providers, the majority of which were prepared after the DLI. The ALJ went on in his analysis of the opinion to point out specific pre- and post-DLI treating records prepared by NP Schell that, he concluded, were contradictory to the provider's restrictive opined limitations. (T. 18).

10

In considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any post hoc rationalizations offered by the Commissioner, but it may consider evidence that was evidently considered by the ALJ, even if it was not expressly mentioned in the administrative decision. *Michelle S. v. Comm'r of Soc. Sec.*, No. 1:22-CV-06203, 2023 WL 6377341, at *3 (W.D.N.Y. Sept. 29, 2023) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability); *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)). The Second Circuit has made clear that although remand is appropriate for further findings or a clearer explanation where the court cannot fathom the ALJ's rationale "in relation to evidence in the record," remand is not warranted where the court can "look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Berry v. Schweiker,* 675 F.2d at 469; *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).

A careful review of the ALJ's decision with respect to the findings and opinion of NP Schell set forth in her medical source statement demonstrates that the ALJ undertook the supportability analysis required by the regulations regarding this treating provider. The ALJ explicitly found that NP Schell's treatment records, and the lack of

explanation or objective clinical findings contained in her form opinion,[2] failed to support the degree of restrictions she identified in her medical source statement. (T.19). He supported his conclusion with citations to the generally benign results of diagnostic imaging ordered by NP Schell, along with the results of her April 5, 2019 initial physical examination of plaintiff, which indicated normal gait, normal range of motion of the spine, and normal muscle strength.  (T. 524-29).[3]  Moreover, a review of prior steps of the ALJ's sequential evaluation finds that nearly every paragraph describing medical findings, signs and symptoms includes references to the treatment records prepared by NP Schell, clearly indicating the ALJ's consideration of the extent of supportability presented by this provider.  Accordingly, the court finds that the ALJ's conclusion in this respect is supported by substantial evidence.

It is, however, less clear whether the ALJ undertook the required consistency analysis regarding NP Schell's medical opinions.  In his specific assessment of NP Schell's opinion, the ALJ did not point to any pre-DLI, objective evidence prepared by a different medical source that was inconsistent with NP Schell's restrictive opinions. (T. 18-19).  Instead, the ALJ generally stated that ". . . the record as a whole does not support the restrictions provided by [NP Schell]." (*Id.*).  District courts in the Second

---

[2] NP Schell's medical source statement does not provide any explanation for her objective medical findings, despite being prompted to provide such an explanation. (T.850-52).

[3] NP Schell's 4/5/19 initial examination was performed approximately five months prior to plaintiff's DLI.

Circuit have consistently found that such conclusory statements, without more, constitute insufficient application of the regulatory factors concerning the evaluation of medical evidence. *See Stephanie F. v. Kijakazi*, No. 8:20-CV-1528 (BKS), 2022 WL 3355964, at *10 (N.D.N.Y. Aug. 15, 2022) ("[T]he ALJ's conclusory statement that [the provider's] conclusions 'are not consistent with the overall medical evidence' is not an adequate articulation of the consistency factor."); *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) (collecting cases) (citations and quotation marks omitted) ("The ALJ's assessment of the supportability of [the] opinions is highly conclusory. The ALJ offered only that '[one] opinion is supported by record review' and that '[the other] opinion is supported by examination.' Such conclusory statements offer no insight into 'how well [either doctor] supported and explained their opinion,' and are insufficient to withstand review.").

    Notwithstanding an ALJ's procedural error in failing to explicitly address the consistency of a medical source's opinion, the court could affirm if " 'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed.' " *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)). Here, looking to other portions of the ALJ's decision, and the clearly credible evidence of record, the court can glean how the ALJ weighed the consistency factor for NP Schell's opinion. Immediately following his assessment of the NP Schell's opinion, the ALJ specifically

discussed objective evidence in the record from other medical sources that contradicted the provider's restrictive findings.  For example, the ALJ pointed out a September 11, 2018 emergency department record indicating that plaintiff was in no acute distress, and that he exhibited no limitations.  (T. 19, *citing* T. 503).  During that same evaluation, plaintiff's gait was observed as "steady without any assistive devices required (T. 19, *citing* T. 501).  The ALJ further pointed to an August 28, 2019 treatment record indicating that plaintiff "walked with a normal gait," exhibited "no kyphosis or scoliosis of the spine," had "intact" motor strength in the upper and lower extremities, and that plaintiff's muscle tone was normal bilaterally.  (T. 19, *citing* T. 576).  The ALJ also pointed to physical therapy records noting plaintiff's "mild" degenerative disc disease.  (T. 19, *citing* 615).

     The ALJ also considered the plaintiff's April 12, 2019 examination upon consultative evaluation by Dr. Lorensen.  (T. 19).  Specifically, the ALJ noted that upon examination, plaintiff was in "no acute distress, gait was normal, squat was reduced, stance was normal, no assistive devices [were] used, and [plaintiff] was able to rise from the chair without difficulty."  (T. 19, *citing* T. 555).  The ALJ recognized that plaintiff exhibited a reduced range of motion in the lumbar spine, but further noted that his deep tendon reflexes were physiological and equal in the extremities, no sensory deficits were noted, and strength was full in the upper and lower extremities.  (T. 19, *citing* 556).

14

Finally, the ALJ explicitly considered plaintiff's reported activities of daily living in assessing the record as a whole. (T. 21). The ALJ noted that plaintiff is independent with his activities of daily living, and that plaintiff reported to Dr. Noia that he could attend to his personal needs, cook, clean, do laundry, go shopping, manage money, and use public transportation. (T. 21, *citing* T. 525, 551). The ALJ recognized plaintiff's statement that he required frequent rest breaks and needed to work slowly, but found no indication that plaintiff required assistance when performing household chores. (T. 21, *citing* T. 551). It is not error for an ALJ to discount a medical source opinion where, as here, the ALJ supportably finds inconsistencies with evidence of plaintiff's activities, along with the medical record as a whole. *See Deanna T., v. Comm'r of Soc. Sec.*, No. 6:23-CV-06034, 2024 WL 860999, at *4 (W.D.N.Y. Feb. 29, 2024) (citing *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (finding that ALJ did not err in declining to credit medical opinion that was inconsistent with the claimant's reported activities of daily living)).

In sum, the ALJ adequately cited to and discussed what little medical evidence was available during the relevant period, as well as evidence from after the DLI, properly noting its limited probative value. His evaluation of NP Schell's opinion must be viewed "against the backdrop of the discussion of the treating records," and it is therefore "proper to read the ALJ's decision as a whole" to avoid the "needless formality to have the ALJ repeat substantially similar factual analyses." *Jeanette J. v.*

15

*Saul*, No. 6:19-CV-0795 (ML), 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020). Reading the ALJ's decision as a whole, the court can glean the ALJ's consideration of the consistency of NP Schell's opinion from his analysis of the pre- and post-DLI treatment records, which immediately follows his discussion of NP Schell's opinion. Accordingly, the court finds that the ALJ's analysis of the consistency factor is not an error warranting remand. *See Adam R. T. v. Comm'r of Soc. Sec.*, No. 21-CV-01170 (FJS/ATB), 2023 WL 1775689, at *4-5 (N.D.N.Y. Feb. 6, 2023) (ALJ's reference to consistency with overall record without further explanation was, at most, harmless error when court could glean ALJ's rationale from analysis of medical findings and other opinions); *Regino v. Comm'r of Soc. Sec.*, No. 20-CV-08518 (RA) (BCM), 2022 WL 4369919, at *15 (S.D.N.Y. Aug. 31, 2022), *report and recommendation adopted*, 2022 WL 4368187 (S.D.N.Y. Sept. 21, 2022) (applying harmless error analysis).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 17) be **DENIED;** and it is further

**RECOMMENDED,** that defendant's motion for judgment on the pleadings (Dkt. No. 22) be **GRANTED**; and it is further

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 6, 2024

Mitchell J. Katz
U.S. Magistrate Judge